NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-333

COMMONWEALTH

vs.

EMER ROBLES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant, Emer Robles, appeals from his conviction of operating under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (a) (1) (OUI).[1]  The defendant argues that (1) a State police trooper improperly opined on the ultimate issue before the jury by testifying that the defendant "was under the influence of intoxicating liquor" and "unsuccessful" in completing field sobriety tests (FSTs), and (2) trial counsel provided the defendant with ineffective assistance of counsel by failing to object to the trooper's testimony or to request a curative instruction.  We affirm.

---

[1] A finding that the defendant was responsible for possessing an open container of alcohol in a motor vehicle, G. L. c. 90, § 24I, was placed on file with the defendant's consent, and so is not before the court on appeal.  See Commonwealth v. McCravy, 430 Mass. 758, 759 n.1 (2000).

Background.  At about 10:30 P.M. on April 20, 2018, Trooper Christopher Amate conducted a routine check of the registration of a motor vehicle being driven on Western Avenue in Lynn, learned that its registered owner was unlicensed, and activated the blue lights of his marked cruiser.  The vehicle pulled over.

The defendant was the driver, and a passenger was in the front seat.  When the trooper approached the vehicle, he "immediately smelt an odor of alcohol."  The trooper saw an open can and asked the defendant what it was; the defendant handed it to the trooper.  It was a half-full can of beer, and there were four more empty beer cans in the front passenger's seat.  As the defendant spoke, the trooper noticed an odor of alcohol on his breath.  Asked if he had been drinking, the defendant responded that he had a couple of beers that night.  The defendant "looked exhausted," as if he could not keep his eyelids open, and had "bloodshot, glassy eyes."  Based on these observations, the trooper asked the defendant to get out of the vehicle.  As the defendant did so, he was swaying and used the car door to maintain his balance.

Asked if he understood English, the defendant replied that he "absolutely could," and responded appropriately to the trooper's questions.  The trooper instructed the defendant twice on how to perform the nine-step walk-and-turn test, and the defendant said that he understood.  During that test, the

2

defendant swayed back and forth, did not count out loud, did not keep his hands by his side, and stopped after the first nine steps and put his hands up in the air. The trooper considered that an "unsuccessful completion" of the nine-step walk-and-turn test.

The trooper then described how to perform the one-leg stand test, telling the defendant he could choose which foot to stand on and could count in Spanish if he chose. The defendant said that he understood the instructions. During that test, the defendant was unable to keep his foot off the ground for more than two seconds. The defendant tried doing it on the other foot, and could not perform the test on that foot either. In the trooper's opinion, that was an "unsuccessful completion" of the one-leg stand test.

The trooper testified that based on all of his observations, he "thought [the defendant] was under the influence of an intoxicating liquor." When questioned further, the trooper stated, "I didn't think he was sober." The defendant was placed under arrest and taken to a nearby sobriety checkpoint to start the booking process.

Through an interpreter, the defendant testified that on April 20, 2018 he worked all day and was at home with his children when his friend, who had been drinking, asked for a ride. The defendant testified that he only drank "half a beer,"

3

and that the empty beer cans in the vehicle belonged to the vehicle's owner. The defendant testified that he did not understand the instructions for the FSTs and was never offered a Spanish interpreter. He admitted that he was tired and that he grabbed the car door, but denied that he was swaying.

Discussion. 1. Opinion testimony. The defendant argues that the trooper improperly testified that he "thought [the defendant] was under the influence of an intoxicating liquor." The defendant contends that this testimony improperly opined on the "ultimate question" of whether the defendant was operating while under the influence, citing Commonwealth v. Canty, 466 Mass. 535, 541 (2013). The defendant further argues that the trooper improperly testified that the defendant was "unsuccessful" in completing both FSTs, citing to Commonwealth v. Gerhardt, 477 Mass. 775, 786-787 (2017).

The defendant did not object to the trooper's testimony, and so we review to determine if there was error, and, if so, whether any such error created a substantial risk of a miscarriage of justice. See Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 324 (2023). There was no error. Like any lay witness, the officer could opine based on his observations about the defendant's level of intoxication. See Canty, 466 Mass. at 540; Commonwealth v. Jones, 464 Mass. 16, 17 n.1 (2012) (police officer may testify to defendant's "apparent intoxication" in

4

OUI prosecution).  See also Mass. G. Evid. § 701 (2023).  The trooper did not opine on the "ultimate question" of whether the defendant's intoxication impaired his ability to drive.  See Canty, 466 Mass. at 541.

As for the trooper's testimony that the defendant was "unsuccessful" in completing the FSTs, it did not amount to error creating a substantial risk of a miscarriage of justice. A police officer may testify to observations of a defendant's performance on FSTs.  See Commonwealth v. Brown, 83 Mass. App. Ct. 772, 774 n.1 (2013) ("The testimony of a police officer about the results of ordinary field sobriety tests like those involved in this case . . . is lay witness testimony, not expert witness testimony").  Cf. Gerhardt, 477 Mass. at 787 ("[p]olice officers may not testify to the administration and results of FSTs [in OUI marijuana prosecutions] as they do in [OUI] alcohol prosecutions").  The trooper's testimony that defendant was "unsuccessful" in completing the FSTs was proper observation testimony that Gerhardt explicitly allows.  Id. at 783 ("a police officer may testify, as a lay witness, to his or her observations of the defendant's performance" on FSTs).

Moreover, the judge's instructions ensured that the jurors would use the trooper's opinion testimony as to both the defendant's intoxication and his unsuccessful performance on the FSTs for their proper purpose.  Paraphrasing the Criminal Model

5

Jury Instructions for Use in the District Court 5.310 (2009), the judge instructed the jurors that it was for "[them] and [them] alone" to decide whether the defendant was under the influence of alcohol, and that they could "accept or reject" the trooper's testimony about the defendant's performance on the FSTs. Cf. Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 390 (2017) (similar instruction diminished prejudice from trooper's improper opinion testimony that defendant's intoxication impaired ability to operate motor vehicle).

2. Ineffective assistance of counsel. The defendant argues that he was deprived of effective assistance of counsel because his attorney failed to object to the trooper's testimony and failed to request a specific curative jury instruction. In assessing whether counsel's performance deprived the defendant of his right to effective assistance of counsel, we apply the Saferian standard: whether that performance fell "measurably below that which might be expected from an ordinary fallible lawyer," and "whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The defendant's raising of his claim of ineffective assistance for the first time on direct appeal makes it the "weakest form" of such a claim, "because 'it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by

6

a defendant viewing the case in hindsight.'" Commonwealth v. Diaz, 448 Mass. 286, 289 (2007), quoting Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). In those circumstances, we may resolve it only where "the factual basis of the [ineffective assistance] claim appears indisputably on the trial record." Commonwealth v. Zinser, 446 Mass. 807, 811 (2006), quoting Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994). Based on our review of the trial record, we discern nothing manifestly unreasonable about counsel's tactical decisions.[2] Because the trooper's testimony did not create a substantial risk of a miscarriage of justice, trial counsel was not ineffective for failing to object to that testimony. See Commonwealth v. Kirwan, 448 Mass. 304, 315 (2007).

> Judgment affirmed.
>
> By the Court (Neyman, Grant & Hershfang, JJ.[3]),
>
> *Joseph F. Stanton*
>
> Clerk

Entered: June 12, 2023.

---

[2] As for the defendant's claim that his trial counsel should have requested "a specific curative instruction that might have lessened the impact" of the trooper's opinion testimony, as mentioned above, the judge gave such an instruction.

[3] The panelists are listed in order of seniority.

7